WALTER B. REMINGTON AND HARRIETT ANNE REMINGTON, HUSBAND AND WIFE, APPELLEES, V. ROBERT BRYAN AND HILDA BRYAN, APPELLANTS.

288 N. W. 2d 253

Filed January 29, 1980. No. 42277.

Martin A. Cannon of Matthews & Cannon, P.C., for appellants.

Warren S. Zweiback and Pat Lamberty of Zweiback, Brady, Kasher & Festersen, P.C., for appellees.

Heard before KRIVOSHA, C. J., McCOWN, BRODKEY, and HASTINGS, JJ., and STUART, District Judge.

STUART, District Judge.

This case is an appeal by the defendants, Robert and Hilda Bryan, from a jury verdict and judgment entered thereon in favor of the plaintiffs, Walter and Harriett Remington, in the amount of $10,000, representing damages for a breach of warranty in connection with the building of a new home. We affirm.

The parties entered into a contract on August 22, 1973, for plaintiffs to buy a home then under construction by defendants. The house was completed and was conveyed to the plaintiffs on November 20, 1973. Beyond these facts there is considerable difference in the evidence with reference to the transaction as related by the parties. However, the evidence was such that a jury could find that at the time of the contract the defendants emphasized the quality of the workmanship to go into the house, and further expressly warranted that they would stand behind their work and that following the closing date they would guarantee repairs for 1 year, which guar-

antee included workmanship and any defects which might arise. Prior to the closing date the plaintiffs listed 29 defects and the defendants agreed to fix them. However, after these defects were not repaired and after a second request, the defendant Robert Bryan was quoted as saying, "I won't put another damn nickel in it." On the day of closing, November 20, 1973, the defendants again assured the plaintiffs that the defects would be corrected and the house was conveyed to the plaintiffs and payment made to the defendants. Shortly after the closing date the plaintiffs observed that the defects had not been corrected and Mrs. Remington contacted Mrs. Bryan, at which time Mrs. Bryan was quoted as saying, "Bob is not going to spend another dime and he is not going to do anything more." On December 11, 1973, after a snowstorm, the plaintiffs discovered that snow had blown into the attic, melted, and the resulting water caused damage to the interior of the house. Plaintiffs again contacted defendants and defendants conceded that the snow blew in because of failure to install flashing in the break in the gambrel roof. Defendants caused this flashing to be installed immediately, but did not repair the damage to the interior of the house, and subsequent snowstorms caused further snow to be blown in and the melting thereof resulted in further damage.

In late January 1974 plaintiffs caused their attorney to send a letter to defendants listing 30 defects and requesting that the defendants make the necessary repairs. Defendants did not contact plaintiffs, nor did they make any of these repairs. Plaintiffs filed this suit on March 27, 1974, listing in the petition 31 alleged defects. After moving into the house in April 1974 plaintiffs employed a Mrs. Herrick to inspect the house. She made a list of 111 claimed defects, which list Mrs. Remington gave to Mr. Bryan in May 1974, at which time Mr. Bryan and his attorney inspected the house and referred to the com-

plaints in this list.

The case came on for trial in June 1978. The complaint lists of November 1973 and May 1974 (the "Herrick" list) were received in evidence, but the list of January 1974 (which was incorporated in the petition) was not admitted in evidence. At the conclusion of plaintiffs' case the plaintiffs moved to file an amended petition which included the "Herrick" list of defects, and the court allowed this amended petition to be filed.

Defendants have assigned 15 errors that are argued in their brief in 7 groupings. They will be considered in the same manner.

Defendants complain that it was error to overrule their motion for a directed verdict. They contend that the parties agreed that the warranty was a promise to remedy any defect within 1 year of closing upon notice and request by plaintiffs; that every defect brought to defendants' attention and which they were allowed to attend to had been remedied; and that with regard to the remaining defects defendants were not allowed to remedy them or that access was refused by plaintiffs. However, with the conflict in evidence by different witnesses, a jury could have found the facts as set forth above. The defendants admitted they did not repair the damage caused by the melting snow blown in the attic on December 11, 1973. In addition to this, the defendants admitted they received the demand to repair sent by plaintiffs' attorney in January 1974 and did not make such repair. The defendants attempt to justify this by a claim that plaintiffs would not permit them to enter the home. Mrs. Remington admitted on cross-examination that certain subcontractors telephoned her with regard to the house, but she never admitted that she refused admittance for the defendants or some of their subcontractors to repair the home. All witnesses agree that Mr. Bryan was admitted to the house and inspected it in May 1974 and did not

offer to repair any of the claimed defects. The rule is: " 'A motion for a directed verdict or its equivalent must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence.' Kortus v. Jensen, 195 Neb. 261, 237 N. W. 2d 845 (1976)." Anderson v. Moore, 202 Neb. 452, 275 N. W. 2d 842.

Upon the evidence introduced, the jury could reasonably find that the plaintiffs did notify the defendants of true defects and that the defendants refused or neglected to correct those defects. Therefore, the trial court was correct in refusing a motion for a directed verdict.

The defendants next complain that the court should not have allowed the plaintiffs to amend their petition at the time of their rest to include a cause of action based upon express warranty and to include the list of complaints known as the "Herrick" list. "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. Whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment." § 25-852, R. R. S. 1943.

The parties agree that the warranty was to the effect that the defendants would correct any defects for 1 year. Since the defendants admit that this ex-

press warranty was made, the allowing of this amendment was within the discretion of the court. The jury was justified in believing that Mrs. Remington delivered the "Herrick" list to Mr. Bryan when he and his attorney came to look at the house in May 1974. The "Herrick" list was not a surprise to the defendants. The list of claimed defects of January 1974 (which is identical to the list attached to the petition except for defect No. 31) was not admitted in evidence, and it was within the court's discretion in the interests of justice to allow the plaintiff to amend their petition to include the "Herrick" list.

The defendants next complain that the court's instruction No. 2 did not correspond with the plaintiffs' petition, as amended. We have examined the instruction given and it appears to us that the court did fairly reflect the allegations of the plaintiffs' petition, as amended, in instruction No. 2.

The defendants next complain of the admission of the "Herrick" list and the refusal of defendants' cautionary instruction No. 7; the refusal to eliminate the items on the "Herrick" list for which specific amounts of cost of repair had not been received in evidence; the refusal to give defendants' requested instruction No. 4; and the giving of the court's instruction No. 14.

The court's instruction No. 14 is a direct quotation of NJI 2.12, defining the preponderance of evidence, and is a standard instruction. Probably, the defendants are attempting to complain about the giving of instruction No. 15 which reads: "You are instructed that if you find for the plaintiffs and against the defendants under either or both theories of recovery, you must then proceed to find and determine the amount of the recovery, which is determined where the construction of a house is substantially performed, then damages recoverable because of defective workmanship or unsuitable materials is measured by the reasonable costs of remedying the

defects or omissions.

"Whether any of the elements of damage have been proved by the evidence is for you to determine. Your verdict must be based on evidence and not upon speculation, guess, or conjecture." This instruction would seem to set forth correctly the measure of damages of the defects to be repaired. "Where a construction contract is substantially performed, the damage which the owner suffers because of defective workmanship or unsuitable materials used is measured by the reasonable cost of remedying the defects." Stungis v. Union Packing Co. of Omaha, Inc., 196 Neb. 126, 241 N. W. 2d 660.

The gist of defendants' complaint is that the witness Herrick did not assign repair costs to remedying certain defects, simply noting the defects and saying the plaintiffs would just have to "live with them." Defendants urge that the court should have instructed that "The measure of damages, when a contractor's violations result in defects which cannot be remedied without reconstruction, is the difference between the value of the structure and the value it would have had if built according to the contract" and cite in support thereof Jones v. Elliott, 172 Neb. 96, 108 N. W. 2d 742.

The plaintiffs did not offer evidence of the amount of damage caused by these defects that "could not be remedied." However, the verdict is supported by evidence of damages, as testified to by plaintiffs' witnesses, with regard to alleged defects that could be repaired. It would have been error to give an instruction setting forth a measure of damages not supported by the evidence. The court was correct in refusing to give such a requested instruction.

We have examined the defendants' requested instruction No. 4 and find that the jury was sufficiently cautioned with regard to the standards to be considered in determining what was indeed a defect by the court's instruction No. 9.

The defendants next complain of the court's giving of instruction Nos. 5 and 8 in which the court set forth the requirements for recovery under an express warranty. The defendants' complaint is that the parties agreed that there was an express warranty wherein the "defendants promised that they would cause repair to be made at no cost to plaintiffs for any defect of material or workmanship of which they were notified within one year of the closing on November 20, 1973." Defendants contend that where the parties have agreed on a fact in issue, the fact is established as a matter of law, and to submit the issue to the jury is error. This is a correct statement of the law, but the giving of these instructions certainly was not prejudicial to the defendants. The court required the jury to find that an express warranty existed (among other things) before finding for the plaintiffs. This requirement constitutes harmless error.

Defendants' 14th assignment of error is the giving of instruction No. 13, which reads as follows: "Plaintiffs would be required to give defendants a reasonable opportunity to perform their warranty to repair or replace defective construction or material, but plaintiffs were not required to perform a useless act, if a reasonable person would under all of the circumstances of the case know that requests would not be met with performance, then requests would not be required." Defendants contend that the plaintiffs pleaded notice and demand for repairs to the house, and therefore were not entitled to an instruction also allowing them to recover even if they did not give such notice and demand.

Under the Nebraska system of code pleading, "The petition must contain * * * a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition * * *." § 25-804, R. R. S. 1943. Plaintiffs' petition conformed to this code requirement and adequately informed

the defendants of plaintiffs' cause of action. The court's instruction fairly reflects the law. The giving of the instruction allowing plaintiffs an additional theory of recovery under the facts was not error. Under the Nebraska system of code pleading, the plaintiff is required to plead the facts, not the theory of recovery.

Lastly, the defendants contend that the plaintiffs inspected the defendants' own home prior to entering into the contract and that the buyers cannot complain that their house was "defective" unless its construction varied from the sample. It is true that when plaintiffs were shown defendants' home, the defendants told the plaintiffs that the house being built was a "mirror image" of that house except for exterior detail. However, Mr. Bryan also told the plaintiffs that he was an exclusive builder, one allowed to build in "Regency," a subdivision in Omaha, the location of the house under construction. Defendants emphasized the quality of workmanship and gave the express warranty as noted above. Under such facts it is not necessary to prove that the "defects" were different from the "show house," but it is sufficient if it is shown that the house in question was not constructed in a good workmanlike manner or that defective materials were installed.

The case was tried to a jury, the jury returned a verdict for the plaintiffs, and the plaintiffs are entitled to this verdict.

AFFIRMED.